Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISS LAW**
611 Wilshire Blvd., Suite 808
Los Angeles, CA 90017
Telephone: 310/208-2800
Facsimile: 310/209-2348

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHOSHANA MINZER,<br><br>Plaintiff,<br><br>vs.<br><br>GLOBAL BLOOD THERAPEUTICS, INC., TED W. LOVE, GLENN F. PIERCE, DAWN A. SVORONOS, PHILIP A. PIZZO, ALEXIS A. THOMPSON, WENDY L. YARNO, SCOTT W. MORRISON, DEVAL L. PATRICK, and MARK L. PERRY,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Shoshana Minzer ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through her counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for her Complaint:

**NATURE OF THE ACTION**

This is an action brought by Plaintiff against Global Blood Therapeutics, Inc. ("GBT" or the "Company") and the members of GBT's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which GBT will be acquired by Pfizer Inc. ("Pfizer") through Pfizer's subsidiary Ribeye Acquisition Corp. ("Merger Sub") (the "Proposed Transaction").

2. On August 8, 2022, GBT and Pfizer issued a joint press release announcing entry into an Agreement and Plan of Merger dated August 7, 2022 (the "Merger Agreement") to sell GBT to Pfizer. Under the terms of the Merger Agreement, each GBT stockholder will receive $68.50 in cash for each share of GBT common stock (the "Merger Consideration"). The Proposed Transaction is valued at approximately $5.4 billion.

3. On August 31, 2022, GBT filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that GBT stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the Company's projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by the Company's financial advisors J.P. Morgan Securities LLC ("J.P. Morgan") and Centerview Partners LLC ("Centerview"); and (iii) Centerview's potential conflicts of interest. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In short, unless remedied, GBT's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting or appraisal decision on the Proposed Transaction. Plaintiff seeks to

enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6. The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company is headquartered in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; and (iii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of GBT.

9. Defendant GBT is a Delaware corporation, with its principal executive offices located at 181 Oyster Point Boulevard, South San Francisco, California 94080. The Company engages in the discovery, development, and delivery of treatments for underserved patient communities with sickle cell disease ("SCD"). GBT's common stock trades on the Nasdaq Global Select Market under the ticker symbol "GBT."

10. Defendant Ted W. Love ("Love") has been President and Chief Executive Officer ("CEO") of the Company since June 2014, and a director since September 2013.

11. Defendant Glenn F. Pierce ("Pierce") has been a director of the Company since February 2016.

12. Defendant Dawn A. Svoronos ("Svoronos") has been a director of the Company since December 2018.

13. Defendant Philip A. Pizzo ("Pizzo") has been a director of the Company since September 2015.

14. Defendant Alexis A. Thompson ("Thompson") has been a director of the Company since March 2021.

15. Defendant Wendy L. Yarno ("Yarno") has been a director of the Company since December 2017.

16. Defendant Scott W. Morrison ("Morrison") has been a director of the Company since January 2016.

17. Defendant Deval L. Patrick ("Patrick") has been a director of the Company since May 2020, as well as from April 2015 to November 2019.

18. Defendant Mark L. Perry ("Perry") has been a director of the Company since April 2015.

19. Defendants identified in paragraphs 10-18 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

20. Pfizer is a research-based, global biopharmaceutical company. Pfizer applies science and its global resources to bring therapies to people that extend and significantly improve their lives through the discovery, development, manufacturing, marketing, sale, and distribution of biopharmaceutical products worldwide. Pfizer works across developed and emerging markets to

advance wellness, prevention, treatments, and cures. For the year ended December 31, 2021, Pfizer generated revenues of $81.3 billion and employed approximately 79,000 people worldwide.

21. Merger Sub is a Delaware corporation and a wholly-owned subsidiary of Pfizer.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

22. Founded in 2011, GBT is a biopharmaceutical company dedicated to the discovery, development and delivery of life-changing treatments that provide hope to underserved patient communities, starting with SCD, a lifelong, devastating inherited blood disorder. The Company has introduced Oxbryta (voxelotor), the first Food and Drug Administration-approved medicine that directly inhibits sickle hemoglobin (HbS) polymerization, the root cause of red blood cell sickling in SCD. GBT is also advancing its pipeline program in SCD with inclacumab, a P-selectin inhibitor in Phase 3 development to address pain crises associated with the disease, and GBT021601 (GBT601), the Company's next generation HbS polymerization inhibitor. In addition, GBT's drug discovery teams are working on new targets to develop the next generation of treatments for SCD.

23. On May 4, 2022, GBT announced its second quarter 2022 financial results and business developments. With more than 1,200 new prescriptions for Oxbryta® (voxelotor) in the first quarter, the Company recorded Oxbryta® net sales of $55.2 million during the period, an increase of 41% year over year. GBT also launched Oxbryta® in the United Arab Emirates ("UAE") via the Company's distributor partnership with Biopharma-MEA. Reflecting on GBT's results, defendant Love stated:

> In the first quarter, we achieved two major milestones in our journey to expand patient access to Oxbryta. In the U.S., we launched Oxbryta for patients ages 4 to 11, including a new age-appropriate formulation, giving us the potential to expand our reach to more SCD patients. We've received positive feedback on the launch, with encouraging trends during the quarter in new prescriptions for this age group as well as some incremental growth for the ages 12 and older population. In addition, we received marketing authorization from the European Commission for Oxbryta, making

> it the first medicine approved in the EU that directly inhibits the molecular basis of sickling and destruction of red blood cells in SCD. This milestone is a key step on our path to reach patients in Europe, with an initial focus on launching in Germany and establishing reimbursement in key countries.
>
> On the clinical front, we are enrolling patients in our two Phase 3 trials evaluating inclacumab for the potential reduction of the frequency of vaso-occlusive crises and related hospital readmissions. In addition, we expect to soon restart our GBT601 Phase 1 trial due to interest from the patients, which will also give us the opportunity to study an increased dose of 150 mg, and we plan to advance GBT601 into a Phase 2/3 trial by mid-year. We continue to be excited about GBT601, which we believe has the potential to improve clinical outcomes for people living with SCD, in a low-dose, once-daily pill.

**<u>The Proposed Transaction</u>**

24. On August 8, 2022, GBT and Pfizer issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

> NEW YORK and SOUTH SAN FRANCISCO, Calif., Aug. 08, 2022 (GLOBE NEWSWIRE) -- Pfizer Inc. (NYSE: PFE) and Global Blood Therapeutics, Inc. (GBT) (NASDAQ: GBT) today announced the companies have entered into a definitive agreement under which Pfizer will acquire GBT, a biopharmaceutical company dedicated to the discovery, development and delivery of life-changing treatments that provide hope to underserved patient communities, starting with sickle cell disease (SCD). The acquisition complements and further enhances Pfizer's more than 30-year heritage in rare hematology and reinforces the company's commitment to SCD by bringing expertise and a leading portfolio and pipeline with the potential to address the full spectrum of critical needs in this underserved community. Pfizer intends to continue to build on the companies' shared commitment to and engagement with the SCD community.
>
> Under the terms of the transaction, Pfizer will acquire all the outstanding shares of GBT for $68.50 per share in cash, for a total enterprise value of approximately $5.4 billion, including debt and net of cash acquired. The Boards of Directors of both companies have unanimously approved the transaction.
>
> SCD is a lifelong, devastating inherited blood disorder impacting millions of people worldwide, predominantly in populations of African, Middle Eastern and South Asian descent. GBT developed Oxbryta® (voxelotor) tablets, a first-in-class medicine that directly targets the root cause of SCD. Oxbryta was approved in the United States in November 2019 and is also approved in the European Union, United Arab Emirates, Oman and Great Britain. Net sales for Oxbryta were approximately $195 million in 2021. Leveraging its global platform, Pfizer plans to accelerate distribution of GBT's innovative treatment to parts of the world most impacted by SCD.

In addition, GBT is developing GBT021601 (GBT601), an oral, once-daily, next-generation sickle hemoglobin (HbS) polymerization inhibitor in the Phase 2 portion of a Phase 2/3 clinical study. GBT601 has the potential to be a best-in-class agent targeting improvement in both hemolysis and frequency of vaso-occlusive crisis (VOC). GBT's promising pipeline also includes inclacumab, a fully human monoclonal antibody targeting P-selectin which is being evaluated in two Phase 3 clinical trials as a potential quarterly treatment to reduce the frequency of VOCs and to reduce hospital readmission rates due to VOCs. Both GBT601 and inclacumab have received Orphan Drug and Rare Pediatric Disease designations from the U.S. Food and Drug Administration (FDA). If approved, GBT's pipeline and Oxbryta have the potential for an SCD franchise that could achieve combined worldwide peak sales of more than $3 billion.

"Sickle cell disease is the most common inherited blood disorder, and it disproportionately affects people of African descent. We are excited to welcome GBT colleagues into Pfizer and to work together to transform the lives of patients, as we have long sought to address the needs of this underserved community," said Albert Bourla, Chairman and Chief Executive Officer, Pfizer. "The deep market knowledge and scientific and clinical capabilities we have built over three decades in rare hematology will enable us to accelerate innovation for the sickle cell disease community and bring these treatments to patients as quickly as possible."

"Today is an exciting milestone that accelerates GBT's mission to discover, develop and deliver life-changing treatments that provide hope to underserved patient communities," said Ted W. Love, M.D., President and Chief Executive Officer, GBT. "Pfizer will broaden and amplify our impact for patients and further propel much-needed innovation and resources for the care of people with sickle cell disease and other rare diseases, including populations in limited-resource countries. We look forward to working together with Pfizer to serve our communities and advance our shared goal of improving health equity and expanding access to life-changing treatments to create a healthier future for all."

Pfizer expects to finance the transaction with existing cash on hand. The proposed transaction is subject to customary closing conditions, including receipt of regulatory approvals and approval by GBT's stockholders.

Due to the proposed transaction, GBT will not hold its previously scheduled conference call to discuss its second quarter 2022 financial results. The company will file its quarterly report on Form 10-Q for the quarter ending June 30, 2022 with the U.S. Securities and Exchange Commission announcing those results on August 8, 2022.

Pfizer's financial advisors for the transaction are Morgan Stanley & Co. LLC and J.P. Morgan Sachs & Co. LLC, with Wachtell, Lipton, Rosen & Katz acting as its legal advisor. GBT's financial advisors for the transaction are J.P. Morgan Securities LLC and Centerview Partners LLC, with Cravath, Swaine & Moore LLP and Goodwin Procter LLP acting as legal advisors.

**Insiders' Interests in the Proposed Transaction**

25. GBT insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of GBT.

26. Notably, pursuant to the Merger Agreement, all outstanding Company options, service-based restricted stock units ("RSUs"), and performance-based restricted stock units ("PSUs"), held by Company insiders will vest and convert into the right to receive cash payments. The following table summarizes the value of ordinary shares, Company options, RSUs, and PSUs that Company insiders stand to receive upon closing of the merger:

| Name | Options | | RSUs | | PSUs[1] | | Total ($) | |
|---|---|---|---|---|---|---|---|---|
| | # | ($) | # | ($) | # | ($) | # | ($) |
| **Executive Officers** | | | | | | | | |
| Ted Love | 215,189 | 5,773,239 | 149,105 | 10,213,684 | 109,316 | 7,488,112 | 473,610 | 23,475,035 |
| Jeffrey Farrow | 59,582 | 1,504,350 | 41,458 | 2,839,890 | 26,502 | 1,815,387 | 127,542 | 6,159,627 |
| Jung Choi | 59,582 | 1,504,350 | 41,458 | 2,839,890 | 26,502 | 1,815,387 | 127,542 | 6,159,627 |
| David Johnson | 59,582 | 1,504,350 | 43,351 | 2,969,526 | 26,502 | 1,815,387 | 129,435 | 6,289,263 |
| Kim Smith-Whitley | 45,448 | 1,593,012 | 30,577 | 2,094,525 | 26,502 | 1,815,387 | 102,527 | 5,502,924 |
| Nazila Habibizad | 40,817 | 1,282,211 | 29,795 | 2,040,923 | 26,502 | 1,815,387 | 97,114 | 5,138,521 |
| Tricia Suvari | 59,582 | 1,504,350 | 41,458 | 2,839,890 | 26,502 | 1,815,387 | 127,542 | 6,159,627 |
| Carrie Krehlik | 57,360 | 2,216,508 | 39,640 | 2,715,340 | 26,502 | 1,815,387 | 123,502 | 6,747,235 |
| **Directors** | | | | | | | | |
| Dawn Svoronos | 2,800 | 129,360 | 3,600 | 246,600 | — | — | 6,400 | 375,960 |
| Mark Perry | 2,800 | 129,360 | 3,600 | 246,600 | — | — | 6,400 | 375,960 |
| Glenn Pierce | 2,800 | 129,360 | 3,600 | 246,600 | — | — | 6,400 | 375,960 |
| Alexis Thompson | 7,935 | 263,972 | 8,400 | 575,400 | — | — | 16,335 | 839,372 |
| Deval Patrick | 2,800 | 129,360 | 3,600 | 246,600 | — | — | 6,400 | 375,960 |
| Philip Pizzo | 2,800 | 129,360 | 3,600 | 246,600 | — | — | 6,400 | 375,960 |
| Wendy Yarno | 2,800 | 129,360 | 3,600 | 246,600 | — | — | 6,400 | 375,960 |
| Scott Morrison | 2,800 | 129,360 | 3,600 | 246,600 | — | — | 6,400 | 375,960 |

27. Moreover, if they are terminated in connection with the Proposed Transaction, GBT's named executive officers stand to receive substantial cash severance, as set forth in the following table:

| Name | Cash Severance ($)(1) | Equity ($)(2) | Benefits ($)(3) | Total ($) |
|---|---|---|---|---|
| Ted Love | 2,427,750 | 23,475,035 | 63,000 | 25,965,785 |
| Jeffrey Farrow | 988,000 | 6,159,627 | 45,000 | 7,192,627 |
| Jung Choi | 958,000 | 6,159,627 | 15,000 | 7,132,627 |
| David Johnson | 988,000 | 6,291,318 | 45,000 | 7,324,318 |
| Kim Smith-Whitley | 1,020,000 | 5,504,979 | 45,000 | 6,569,979 |

***The Proxy Statement Contains Material Misstatements or Omissions***

28. The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to GBT's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

29. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the Company's financial projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by J.P. Morgan and Centerview; and (iii) Centerview's potential conflicts of interest.

***Material Omissions Concerning the Company Financial Projections***

30. The Proxy Statement omits material information regarding the Company's financial projections.

31. Specifically, the Proxy Statement sets forth that:

> [o]n August 3, 2022, the Board, along with members of management and representatives of the Company's financial advisors, Cravath and Goodwin, met virtually to discuss, among other topics, updated projections refined by the Company's management reflecting certain updates since June 14, 2022 . . .. At the meeting,

> members of the Company's management presented updated projections to the Board (as described below in the section of this proxy statement entitled "— Certain Financial Forecasts"). Following discussion, the Board authorized such projections for use by the Board in evaluating the potential transaction with Pfizer and by the Company's financial advisors in their financial analyses in connection with the potential delivery of their respective fairness opinions.

Proxy Statement at 31. The Proxy Statement fails to disclose the specific updates made to the Company's projections and whether these updates increased or decreased the Company's projected (i) Risk-Adjusted Revenue, (ii) EBIT, and (iii) Unlevered Free Cash Flow.

32. Additionally, the Proxy Statement discloses the Company's risk-adjusted projections but fails to disclose (i) the unadjusted projections, (ii) quantify the impact the risk-adjustments had to the company's projections, and (iii) detail and quantify the specific risk-adjustments made to the Company's projections.

***Material Omissions Concerning J.P. Morgan's and Centerview's Financial Analyses***

33. The Proxy Statement omits material information regarding J.P. Morgan's and Centerview's financial analyses.

34. The Proxy Statement describes J.P. Morgan's and Centerview's fairness opinions and the various valuation analyses they performed in support of their opinions. However, the descriptions of J.P. Morgan's and Centerview's fairness opinions and analyses fail to include key inputs and assumptions underlying these analyses. Without this information, as described below, GBT's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on J.P. Morgan's and Centerview's fairness opinions in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

35. With respect to J.P. Morgan's *Public Trading Multiples* analysis and *Selected Transaction Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the companies and transactions analyzed.

36. With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) quantification of the inputs and assumptions underlying the discount rates of 10.5% to 13.5% used in the analysis; and (ii) the number of outstanding shares of GBT common stock used in the analysis.

37. With respect to Centerview's *Selected Public Company Analysis* and *Selected Precedent Transaction Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the companies and transactions analyzed.

38. With respect to Centerview's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) quantification of the perpetual growth rates used in the analysis; (ii) quantification of the inputs and assumptions underlying the discount rates of 10.5% to 12.5% used in the analysis; and (iii) the number of diluted outstanding shares of GBT common stock used in the analysis.

39. Without such undisclosed information, GBT stockholders cannot evaluate for themselves whether the financial analyses performed by J.P. Morgan and Centerview were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required to ensure that stockholders can fully evaluate the extent to which J.P. Morgan's and Centerview's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction or seek appraisal.

40. The omission of this material information renders the statements in the "Opinion of J.P. Morgan" and "Opinion of Centerview" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Centerview's Potential Conflicts of Interest***

41. The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by Centerview.

42. The Proxy Statement sets forth:

> In the two years prior to the date of its written opinion, Centerview was engaged to provide financial advisory services unrelated to the Merger to parent, including in connection with Parent's acquisition of Arena Pharmaceuticals, Inc. in 2022 and certain other strategic matters. Centerview received between $20 million and $30 million in aggregate compensation from Parent for work performed during such period.

*Id.* at 51. The Proxy Statement fails, however, to disclose the specific strategic matters that Centerview has provided to Pfizer in the two years prior to the date of its written fairness opinion and whether these strategic matters in any way related to a potential acquisition of GBT by Pfizer.

43. Full disclosure of investment banker compensation and all potential conflicts is required due to the significant role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

44. The omission of this material information renders the statements in the "Opinion of Centerview" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

45. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff, and the other stockholders of GBT will be unable to make an informed voting or appraisal decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

### Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder

46. Plaintiff repeats all previous allegations as if set forth in full.

47. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, considering the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

48. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresents and/or omits material facts, including material information about the Company's projections, the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by J.P. Morgan and Centerview, and Centerview's potential conflicts of interest. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

49. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction or seek to exercise their appraisal rights.

50. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

51. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

52. Plaintiff repeats all previous allegations as if set forth in full.

53. The Individual Defendants acted as controlling persons of GBT within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or

directors of GBT, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

54. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

55. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

56. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

57. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

58. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as

controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, GBT's stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of GBT, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to GBT stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: September 9, 2022

**WEISS LAW**
Joel E. Elkins

By: _/s/ Joel E. Elkins_

Joel E. Elkins
611 Wilshire Blvd., Suite 808
Los Angeles, CA 90017
Telephone: 310/208-2800
Facsimile: 310/209-2348
-and-
Michael Rogovin
476 Hardendorf Ave. NE
Atlanta, GA 30307
Telephone: 404/692-7910
Facsimile: 212/682-3010

*Attorneys for Plaintiff*